UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **FIRST REALTY PROPERTY MANAGEMENT, LTD.,** *et al.,* | ) ) ) | CASE NO. 1:07 CV 2226 |
| Plaintiffs, | ) ) | JUDGE PATRICIA A. GAUGHAN |
| vs. | ) ) ) | |
| **MCDONALD & COMPANY SECURITIES, INC.,** *et al.,* | ) ) ) | **Memorandum of Opinion and Order** |
| Defendants. | ) | |

### INTRODUCTION

This matter is before the Court upon defendant's motion to dismiss for failure to state a claim upon which relief can be granted (Doc. 40) and plaintiffs' motion for leave to file *instanter* a surreply (Doc. 48). This case arises out of the alleged conversion of monies from a 401(k) profit sharing trust established under the Employee Retirement Income Security Act. For the reasons that follow, defendant's motion to dismiss is GRANTED, and plaintiffs' motion for leave is DENIED.

### FACTS

1

The facts set forth herein are taken from plaintiffs' First Amended Complaint and are accepted as true for the purposes of this Opinion. Only those facts necessary for the resolution of the instant motion to dismiss are presented.

Plaintiffs First Realty Property Management Ltd., as sponsor of the First Realty Property Management Ltd. 401(k) Profit Sharing Plan (the "Plan"), and James A. Grasso and Mary E. Abazio, as Trustees of the Plan, bring this action against defendants McDonald & Company Securities, Inc., n/k/a KeyBanc Capital Markets Inc., KeyBank, N.A., Fifth Third Bank, Rhonda Irvin-Cox, Daniel Cox and Irvin Administrative Solutions, LLC, d/b/a Administrative Solutions, LLC.

The Plan was created pursuant to the Employee Retirement Income Security Act ("ERISA"). The assets of the Plan are maintained in the First Realty Property Management Ltd. 401(k) Profit Sharing Trust (the "Trust"), and all contributions made by Plan participants or on their behalf are invested in a trust fund (the "Trust Fund"). McDonald & Company Securities, Inc., n/k/a KeyBanc Capital Markets Inc. ("McDonald") provided investment and brokerage services to the Plan and Trust. McDonald also held the Trust Fund account at KeyBank used by the Trust for the investment, management and disbursement of Trust assets. Irvin Administrative Solutions, LLC, d/b/a Administrative Solutions, LLC ("Administrative Solutions") provided third-party administration services to the Plan and maintained an account with Fifth Third Bank ("Fifth Third" or "defendant").

The Plan provides that participants may take loans against their individual 401(k) accounts or otherwise request distributions under certain circumstances. In 2003, Administrative Solutions and Rhonda Irvin-Cox (collectively, the "Administrative Solutions Defendants")

together with plaintiffs and McDonald established a procedure for processing requests by Plan participants for loans or distributions. The procedure required the participant and a Trustee to sign a document with written instructions, including the amount to be loaned or distributed. Administrative Solutions was then to forward the instructions to McDonald. Upon receipt, McDonald was to issue a check from the participant's account in the Trust Fund and deliver the check to Administrative Solutions. The check was to be made payable to another third-party services company, sometimes Sterling Trust, that would perform administrative tasks such as generating tax forms as required by applicable laws. Sterling Trust was then to make payment to the participant.

Plaintiffs allege that the Administrative Solutions Defendants instructed McDonald to issue checks from the Trust Fund - made payable to Sterling Trust - without authorization from Plan participants. McDonald did so and delivered these checks to Administrative Solutions. The Administrative Solutions Defendants indorsed the checks "for deposit only" and deposited the checks into Administrative Solutions' account at Fifth Third. Fifth Third credited the Administrative Solutions account and presented the checks to KeyBank for payment.

Plaintiffs' First Amended Complaint asserts four causes of action against Fifth Third: (1) common law negligence; (2) negligence under Ohio's Uniform Commercial Code, Ohio Rev. Code Chapters 1303 and 1304; (3) common law conversion; and (4) conversion under Ohio's Uniform Commercial Code, Ohio Rev. Code Chapters 1303 and 1304. Fifth Third moves to dismiss these counts pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs oppose the motion.[1]

---

[1] In its opposition to the motion to dismiss, First Realty asserts that it

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court must accept all of the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997). However, the complaint must contain "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) (emphasis in original).

**DISCUSSION**

Before proceeding with the discussion, it will be useful to set forth the relationships between the parties using the terms used in the UCC. McDonald held the Trust Fund account at KeyBank and the checks at issue were issued from this account. Therefore, KeyBank is the "drawee" bank. However, the account was in McDonald's name. As a result, the parties dispute whether McDonald is the "issuer" or "drawer" of the checks or whether McDonald was acting as First Realty's agent when it issued the checks to Sterling Trust, rendering First Realty the issuer/drawer. Sterling Trust is the "payee", as the checks were made payable to the order of Sterling Trust. The Sterling Trust checks were deposited by Administrative Solutions into its

---

is also pursuing a claim against Fifth Third for aiding and abetting fraud. The Court finds that no such claim has been asserted in the pleadings.

account at Fifth Third, making Fifth Third the "depositary" bank.

*A.     The Common Law Claims*

Fifth Third argues that plaintiffs' common law claims are displaced by the UCC. Chapter 1303 of the UCC governs transactions involving negotiable instruments, including checks. Ohio Rev. Code. § 1303.01, *et seq.* Chapter 1304 governs bank deposits and collections. Ohio Rev. Code. § 1304.01, *et seq.* The UCC provides that "Chapters 1301, 1302, 1303, 1304, 1305, 1307, 1308, 1309, and 1310 of the Revised Code shall be liberally construed and applied to promote their underlying purposes and policies." Ohio Rev. Code § 1301.02(A). The "underlying purposes and policies" include simplicity, clarity, and uniformity of the law. *Id.* at § 1301.02(B). However, the UCC does provide that certain common law principles survive:

> Unless displaced by the particular provisions of Chapters 1301, 1302, 1303, 1304, 1305, 1307, 1308, 1309, and 1310 of the Revised Code, the principals [sic, principles] of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement their provisions.

Ohio Rev. Code § 1301.03.

*1.     Displacement of the Common Law Negligence Claim*

Plaintiffs allege that Fifth Third had a duty to exercise ordinary care in handling the deposits made by Administrative Solutions and that Fifth Third breached this duty by depositing checks payable to Sterling Trust or others into the Administrative Solutions account where Administrative Solutions endorsed the checks "for deposit only." Defendant argues that plaintiffs' common law negligence claim is displaced by the statutorily-created liability scheme set forth in the UCC.

5

"Articles 3 and 4 of the UCC [Ohio Rev. Code § 1303.01, *et seq.* and § 1304.01, *et seq.*, respectively] establish the standard of care applicable to a bank's handling of a negotiable instrument, thus displacing common law negligence in this area." *Metz v. Unizan Bank*, 416 F.Supp.2d 568, 581 (N.D. Ohio 2006) (Nugent, J.) (claim for negligence by drawer against depositary bank that improperly deposited checks into the account of one other than the payee was barred). The *Metz* court relied on the fact that the UCC provides for negligence liability for imposters and fictitious payees (§ 1303.44) and for forged signatures and alterations of instruments (§ 1303.49). In finding the common law negligence claim was displaced, the *Metz* court further stated:

> Aside from the listed causes of action in O.R.C. § 1301.03 which are expressly made cumulative, (except where otherwise stated), the Ohio codification of the UCC incorporates a statement of purpose which also shows a legislative intent to supplant the common law in most instances. Ohio Revised Code § 1301.02(B) states that the underlying purpose and policy of the UCC, as adopted by the Ohio legislature is "(1) to simplify, clarify, and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; [and] (3) to make uniform the law among various jurisdictions." This purpose cannot be served if parties can avoid the requirements of the UCC by pleading common law causes of action along with their UCC claims for the same alleged transgressions.

*Id.* at 581-82; *see also Amzee Corp. v. Comerica Bank*, 2002 Ohio 3084 (Ohio App. 2002) (common law claim for negligence by drawer against depositary bank was displaced by the Ohio UCC where employee forged signatures on employer's checks); *Tatis v. U.S. Bancorp*, 473 F.3d 672, 677 (6th Cir. 2007) (negligence claim by drawer against drawee bank for payment of unauthorized checks where drawer's agent forged drawer's name was precluded, because "parties may not rely on a common law action to avoid the clear mandates of the U.C.C.";

6

drawer was to proceed under § 1304.35 of the UCC, which addresses when a drawer may recover against a drawee for unauthorized signatures).

The Court finds the reasoning of the above-cited cases persuasive. Accordingly, Fifth Third's motion to dismiss the common law negligence claim asserted against it is granted.

*2. Displacement of Common Law Conversion Claim*

The UCC also addresses liability for conversion. The UCC specifies that:

> The law applicable to conversion of personal property applies to instruments. An instrument *also* is converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or if a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. *An action for conversion of an instrument may not be brought by the issuer or acceptor of the instrument* or a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

Ohio Rev. Code § 1303.60(A) (emphases added). By its own terms, the UCC incorporates the common law tort of conversion and states that the common law tort applies to negotiable instruments. Therefore, plaintiffs' claim should proceed under this statutory provision. *Metz*, 416 F.Supp.2d at 581 (common law claim by drawer against depositary bank for conversion where depositary bank deposited checks into account of one other than the payee was precluded by § 1303.60 of the UCC); *see also Amzee*, 2002 Ohio 3084 (common law claim by drawer against depositary bank for conversion where employee stole checks, forged employer's signature and negotiated checks into personal account was displaced by UCC).

In an attempt to avoid this result, plaintiffs argue that the Plan was not the issuer of the checks. Plaintiffs state "there is no evidence to support a finding that Plaintiffs' status is that of

7

a "drawer" under the provisions of the U.C.C." Opposition at 5.[2] However, plaintiffs allege in their First Amended Complaint that the checks in dispute were drawn on the Plan's Trust Fund account and that McDonald held that account. First Amended Complaint at ¶¶ 14, 19; *see also* Plaintiffs' Opposition at 2, 3. In any event, the UCC does not seem to require that one be an issuer or drawer of an instrument to be bound by its dictates. This argument more appropriately addresses whether or not plaintiffs can maintain a claim for conversion under the UCC and will be considered below.[3]

The Court finds that the first sentence of Ohio Rev. Code § 1303.60(A) displaces plaintiffs' common law cause of action. Defendant's motion to dismiss the common law conversion claim asserted against it is granted.

*B.     Failure to State a Claim for Negligence Under the UCC*

Defendant argues that plaintiffs have failed to state a claim for negligence under the UCC because, as a depositary bank, Fifth Third owed no duty to First Realty under the statute. Defendant argues that any liability it might incur arises as a result of the transfer and presentment warranties created by the statute. One who transfers an instrument for consideration makes certain "transfer warranties" to the transferee. One such warranty is that all signatures on the instrument are authentic and authorized. Ohio Rev. Code § 1303.56; *see also id.* at §

---

[2] The UCC precludes any action for conversion by an issuer. Ohio Rev. Code § 1303.60. Plaintiffs argue they were not the drawer. The UCC equates an "issuer" with a "drawer." Ohio Rev. Code § 1303.01.

[3] The Court also notes that if the Plan is not the issuer of the checks and the funds were not drawn on the Plan's Trust Fund account, the Plan would have suffered no harm and would have no standing to bring this lawsuit.

8

1304.17.  The transfer warranties may be enforced by a transferee of an instrument against the transferor.  *Id.*  Similarly, one who presents an instrument to the drawee bank for payment makes certain presentment warrantees to the drawee.  *Id.* at § 1303.57.  The presentment warranties may be enforced by the drawee bank against the presentor and all previous transferors.  *Id.*

Under the statutory scheme, Fifth Third is potentially liable only to those to whom it presented or transferred the instruments (*i.e.*, to the drawee, KeyBank).  In this action, KeyBank has, in fact, asserted a cross-claim against Fifth Third for such liability.  KeyBank, in turn, faces potential liability to plaintiffs for improper payment of the instruments.  Plaintiffs, in response to defendant's argument, fail to cite to any negligence provision in the UCC that might support their claim against Fifth Third.  Nor do plaintiffs contest that the scheme described above applies to the facts presented here.  Accordingly, Fifth Third's motion to dismiss plaintiffs' claim for negligence under the UCC is granted.

*C.      Failure to State a Claim for Conversion under the UCC*

Defendant argues that plaintiffs cannot state a claim for conversion because they have no ownership interest in the checks and that the payee is the proper plaintiff in a conversion action.  Defendants are correct that the payee of the check traditionally possesses the cause of action.  *See e.g.,* 2 White & Summers § 18-4 (payee is the owner of the check and can sue for conversion of the funds that should have been paid to him).  However, this assumes that the drawer willingly made a check payable to the payee.  A problem arises when the party upon whose account the check was drawn did not authorize the check in the first place.  *See id.*  It would seem that the "drawer" or "issuer" is the true owner of the funds, as the funds were stolen from him by the unauthorized making of the check.  *Id.*  This is the position of First Realty in the instant case.  But, the UCC explicitly precludes a conversion claim by the "issuer."  Ohio Rev. Code §

9

1303.60(A).

Plaintiffs argue that they are not precluded from bringing suit, because they did not authorize the checks and, so, cannot be considered the "issuer." White & Summers consider the holder of the checking account whose funds were misappropriated as the "issuer" even though it did not authorize the check that was drawn on its account. White & Summers § 18-4(a). White & Summers admit that, in fairness, the "issuer" should have some cause of action against the depositary bank. *Id.* However, the UCC unambiguously prohibits such a suit in conversion. It is not for this Court to ignore the plain language of the statute. The Court finds that, in the absence of any authority to the contrary, it is bound to dismiss the conversion claim given the plain language of the UCC.

*D.     Plaintiffs' Motion for Leave*

Plaintiffs' motion for leave to file a surreply is denied. To the extent that the proposed surreply repeats arguments already made, it is improper. Likewise, to the extent that it makes new arguments, it is also improper.

**CONCLUSION**

For the foregoing reasons, Fifth Third's motion to dismiss is GRANTED. Plaintiffs' motion for leave to file a surreply is DENIED.

IT IS SO ORDERED.

                                 /s/ Patricia A. Gaughan
                                PATRICIA A. GAUGHAN
                                United States District Judge

Dated: 1/4/08